IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

EDWIN SANTIAGO,
FDOC No. G-777308,
    Plaintiff,

vs.                                                  Case No.:  5:17cv74/TKW/EMT

CAPTAIN BARBER,  et al.,
    Defendants.
_____/

# REPORT AND RECOMMENDATION

Plaintiff Edwin Santiago ("Santiago"), an inmate of the Florida Department of Corrections ("FDOC") proceeding pro se and in forma pauperis, commenced this case by filing a complaint under 42 U.S.C. § 1983 (ECF No. 1).  Presently before the court is Santiago's Amended Complaint (ECF No. 13).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).  Upon consideration of Santiago's pleadings, the undersigned concludes he has stated only one plausible claim for relief against only one of the Defendants named in the Amended Complaint.  Therefore, his other claims should be dismissed.

I. BACKGROUND

Santiago names three Defendants in his Amended Complaint, all of whom were FDOC officials at the Main Unit of the Northwest Florida Reception Center ("NWFRC-Main Unit") at the time of the events underlying Santiago's claims: Officer Dikes, Captain Barber, and K. Profitt (ECF No. 13 at 1–2). Santiago asserts Officer Dikes engaged in excessive force, in violation of the Eighth Amendment (*id.* at 8). Santiago asserts Captain Barber was deliberately indifferent to his serious medical need, in violation of the Eighth Amendment (*id.* at 7). Santiago also claims he was placed in administrative confinement, in violation of his rights under the Fourth and Fourteenth Amendments (*id.* at 8). Last, Santiago asserts Defendant Profitt is liable for the conduct of Captain Barber and Officer Dikes, because Profitt approved Santiago's informal grievances complaining of the conduct (*id.* at 7). Santiago seeks compensatory and punitive damages (*id.*). He also includes a general prayer for relief (*id.*).

II. FAILURE TO STATE A FEDERAL CLAIM UNDER § 1983 AS TO CAPTAIN BARBER AND K. PROFITT

A. <u>Statutory Screening Standard</u>

Because Santiago is a prisoner proceeding in forma pauperis, the court must dismiss this case if the court determines that the complaint fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A.

The statutory language "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," therefore, dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and construed in the light most favorable to Baker. *See Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997).

The court must consider the operative pleading (in this case, the Amended Complaint) in its entirety. The court will also consider other sources which courts ordinarily examine when ruling on a 12(b)(6) motion, in particular, documents attached to the Amended Complaint or incorporated therein by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *Saunders v. Duke*, 766 F.3d 1262, 1272 (11th Cir. 2014); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal . . . .").

To survive statutory screening under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.

Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quotation marks and citation omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation marks and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation marks and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

    B.    <u>Santiago's Factual Allegations</u>

Santiago alleges on January 12, 2017, two officers escorted him and two other inmates to the medical building for x-rays (Amended Complaint, attached grievance Log #110-1701-0129). Santiago and the other inmates were secured with handcuffs and leg restraints (*id.*). Santiago and one of the inmates were sitting on a bench outside the x-ray room waiting for the third inmate to complete his examination by the x-ray tech (*id.*). Officer Dikes (referred to a the "3rd officer") began yelling, "Sit the fuck down!" and grabbed the second inmate by the neck, choking him with both hands (*id.*). The other officer's attempt to stop the attack by Dikes was unsuccessful, and the inmate began to turn red, his eyes began to protrude, and he appeared to be losing consciousness (*id.*). Santiago attempted to assist the other officer in stopping the attack by placing his shoulder under Officer Dikes' arms (*id.*). The other officer yelled, "What's wrong with you!" at Dikes, and Dikes finally released his hold (*id.*). While the officer attended to the choked inmate, Officer Dikes punched Santiago in the face, knocking him to the floor, and causing neck and back pain, abrasions, and a "busted" lip (Amended Complaint at 5–6, attached grievance Log #110-1701-0129).

Santiago was placed in administrative confinement without receiving medical treatment (Amended Complaint at 5–6, attached grievance Log #110-1701-0130). Santiago spoke to Captain Barber and informed him of his injuries, but Barber "denied medical treatment" (*id.*).

Santiago filed informal grievances complaining about the attack by Officer Dikes and Captain Barber's failure to provide medical care (Amended Complaint at 5–7, attached grievances). Defendant K. Profitt approved the grievances insofar as they were forwarded to the Office of Inspector General for further review and investigation (*id.*). The institutional administration forced Officer Dikes to resign as a result of the altercation (Amended Complaint at 5).

C. Discussion

1. Deliberate Indifference to Serious Medical Need

When brought by convicted prisoners, claims of deliberate indifference to serious medical needs proceed under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *See Gilmore v. Hodges*, 738 F.3d 266, 271 (11th Cir. 2013). Stating a claim of inadequate medical treatment requires satisfying two minima (from which the case law has ultimately derived four requirements). First, there must be, objectively speaking, conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation—one "denying 'the minimal civilized

measure of life's necessities.'" *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish. *See Wilson*, 501 U.S. at 300 ("The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual punishment. If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphases in original)).

In the context of denial of medical treatment, each of these minima has been more specifically described as encompassing two subsidiary requirements. To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively "serious medical need[ ]," *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), one that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Second, it is necessary to demonstrate that the response made

by the public official to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law, *Estelle*, 429 U.S. at 105–06.  Conduct that is more than merely negligent includes:  "(1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all."  *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011).

To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of "deliberate indifference," *Estelle*, 429 U.S. at 105, which is in turn defined as requiring two separate things: "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [ ] and . . . draw[ing of] the inference," *Farmer*, 511 U.S. at 837.

Here, Santiago's allegations fail to plausibly suggest he had a serious medical need or that Captain Barber acted with an attitude of deliberate indifference.  As previously discussed, a serious medical need, for Eighth Amendment purposes, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Farrow*, 320 F.3d at 1243.  Santiago states he informed Captain Barber

Case No. 5:17cv74/TKW/EMT

of his injuries, but the only visible injuries were a "busted lip" and abrasions. Santiago's injuries were not so obvious that the need for a doctor's attention was easily recognizable. And assuming that Santiago informed Captain Barber of his neck and back pain, he does not allege he told Captain Barber about the extent or severity of his pain, nor does Santiago allege that Barber was otherwise aware of any facts from which the inference could be drawn that a substantial risk of serious harm existed if he did not refer Santiago for medical treatment. Moreover, Santiago does not allege he thereafter sought medical treatment for any of his injuries, or that he suffered any long-term or permanent physical injuries from the assault by Dikes. He simply states that Captain Barber's disregard "cause [sic] undo [sic] mental stress" (Amended Complaint, attached grievance Log #110-1701-0130).

Santiago's factual allegations fail to state a plausible Eighth Amendment claim of deliberate indifference as to Captain Barber; therefore, the claim should be dismissed pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

    2.    <u>Placement in Disciplinary Confinement</u>

Santiago alleges after the assault by Officer Dikes, he was placed in administrative confinement, but he was never charged with a disciplinary infraction (Amended Complaint at 8). "Section 1983 creates no substantive rights; it merely provides a remedy for deprivations of federal statutory and constitutional rights."

*Almand v. DeKalb Cnty., Ga.*, 103 F.3d 1510, 1512 (11th Cir. 1997) (citation omitted). Therefore, "[i]n order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001) (citation omitted).

Santiago's Amended Complaint appears to assert he was deprived of due process guaranteed by the Fourteenth Amendment. "[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citation omitted). Although there is no constitutional right not to be placed in administrative confinement, the Supreme Court has recognized that states may create liberty interests which are protected by the Due Process Clause. *See Sandin v. R.D. Conner*, 515 U.S. 472, 483–84, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). In the prison context, state action will not violate due process unless it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* 515 U.S. at 484. In *Sandin*, the Supreme Court found that the defendant's being placed in disciplinary segregation for 30 days

was neither a "dramatic departure" from the ordinary conditions of confinement nor a "major disruption in his environment." *Id.* at 485–86.

FDOC policy defines administrative confinement as "the temporary removal of an inmate from the general inmate population in order to provide for security and safety until such time as more permanent inmate management processes can be concluded." Fla. Admin. Code r. 33-602.220(1)(a). Reasons for placement in administrative confinement include that an investigation is pending and the presence of the inmate in the general population might interfere with that investigator or present a danger to the inmate. *Id.*, r. 33-602.220(3)(e). An investigating officer is authorized to request that the senior correctional officer place the inmate in administrative confinement for this reason and the length of time spent in this status may not exceed 15 working days unless one, 5-working-day extension is granted by the Institutional Classification Team. *Id.* Inmates in administrative confinement must be provided the same clothing, bedding, linen, personal property, comfort items, diet and meals, canteen privileges, mental health services, access to legal and reading materials, and opportunities for correspondence as the general inmate population. *Id.*, r. 33-602.220(5). However, exercise, telephone privileges, visits, and the number of library books and writing utensils are more restricted than in the general population. *Id.*

Here, Santiago does not allege any facts which plausibly suggest that the conditions or duration of his confinement in administrative confinement were either "atypical" or imposed a "significant hardship." *Sandin*, 515 U.S. 484. Therefore, he has not shown that his placement in administrative confinement deprived him of a liberty interest protected by the Fourteenth Amendment.

To the extent Santiago asserts a Fourth Amendment claim based upon his placement in administrative confinement without probable cause, he has not stated a plausible Fourth Amendment violation. Broadly stated, the Fourth Amendment protects individuals against unreasonable searches and seizures. *See* U.S. Const. amend. IV. An "unreasonable seizure" within the meaning of the Fourth Amendment encompasses false imprisonment and its subset, false arrest, *Camilo–Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir. 1998), both of which arise out of restraints on bodily movement or "detention without legal process," *Harrington v. City of Nashua*, 610 F. 3d 24, 29 (1st Cir. 2010) (citing *Wallace v. Kato*, 549 U.S. 384, 389, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007)). The shared elements of false-imprisonment and false-arrest claims are typically that "(1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the defendant had no privilege

to cause the confinement." *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3 n.6 (1st Cir. 1995) (citation omitted).

Insofar as Santiago brings a false-arrest or false-imprisonment claim, he does not allege any facts suggesting that any named Defendant was involved in his placement in administrative confinement. Further, it is apparent from Santiago's allegations that he was placed in administrative confinement pending the Inspector General's investigation of Officer Dikes' conduct. This was not a violation of Santiago's Fourth Amendment right to be free from unreasonable seizures.

Santiago has failed to state a plausible claim under the Fourth or Fourteenth Amendment; therefore, these claims should be dismissed pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Claims Against Defendant Profitt

Santiago's factual allegations against Defendant Profitt do not remotely suggest a basis for liability. Santiago alleges Profitt approved his grievances, and the grievances he attached to his Amended Complaint verify that Profitt approved the grievances insofar as they were forwarded to the Office of Inspector General for further review and investigation. Profitt advised Santiago that his suggestion that Captain Barber should be "written up and reprimanded," and his suggestion that Officer Dikes be "brought under charges of assault," were "not within an inmate's

scope of responsibility or authority," but this fact is insufficient to state a plausible basis for holding Profitt liable for Officer Dikes' use of force, which is the only constitutional claim that has survived the court's plausibility screening. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (same); *see also, e.g., Hoever v. Belleis*, 703 F. App'x 908, 912 (11th Cir. 2017) (unpublished but recognized as persuasive authority) (plaintiff's allegations that supervisors denied grievances against their subordinates was insufficient to establish that the supervisors instigated or encouraged unlawful conduct). Santiago's claims against Defendant Profitt should be dismissed pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

III. CONCLUSION

Accepting the allegations of Santiago's Amended Complaint as true, and liberally construing them in the light most favorable to Santiago, the undersigned concludes that Santiago's allegations fail to state a plausible Eighth Amendment claim against Captain Barber, fail to state a plausible Fourth or Fourteenth Amendment claim against any Defendant, and fail to state a plausible constitutional claim against K. Profitt. Therefore, all of Santiago's claims should be dismissed

with the exception of his Eighth Amendment excessive force claim against Officer Dikes.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Plaintiff's Eighth Amendment claim against Defendant Barber be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1);

2. That Plaintiff's Fourth and Fourteenth Amendment claims be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1);

3. That Plaintiff's claims against Defendant Profitt be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and

4. That this case be recommitted to the undersigned for further proceedings on Plaintiff's Eighth Amendment excessive force claim against Defendant Dikes.

At Pensacola, Florida this 22nd day of August 2019.

>*/s/ Elizabeth M. Timothy*
>**ELIZABETH M. TIMOTHY**
>**CHIEF UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**